# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **EMIL MARSHON SIMON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 12-2796-JAR** |
| ) | **Consolidated with 12-2797** |
| ) | |
| **GRAFTON, INC.** ) | |
| ) | |
| **and** ) | |
| ) | |
| **BIOMUNE COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff Emil Marshon Simon, proceeding *pro se* and *in forma pauperis*, filed separate
employment discrimination actions against Defendants Grafton, Inc. d/b/a/ Grafton Staffing
Companies and G3 Industrial Recruiting, LLC ("Grafton") and Biomune Company ("Biomune"),
alleging Defendants violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§
2000e, et seq., claiming that he was sexually harassed, a victim of racial discrimination and
retaliation, and that Defendants have engaged in a conspiracy as governed by 42 U.S.C. §
1985(3). The cases were subsequently consolidated (Docs. 42, 71). This matter is before the
Court on Motions for Summary Judgment filed by Defendant Grafton (Doc. 60) and Defendant
Biomune (Doc. 29).[1] Plaintiff also moves for summary judgment (Docs. 32, 59), for leave to
supplement evidence in support of his motion (Docs. 37, 67) and for appointment of counsel

---

[1] Both Defendants filed a Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion as required
by D. Kan. Rule 56.1(f). Docs. 31, 62.

(Docs. 39, 69).  Both Defendant Biomune and Grafton move to strike Plaintiff's motion (Docs. 36, 65).  For the reasons set forth in detail below, the Court denies Defendants' motions to strike and grants Plaintiff's request for leave to supplement.  The Court further denies Plaintiff's motion for summary judgment and grants Defendants summary judgment on all counts.[2]

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."[3] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[7]  In attempting to meet this standard, a movant that

---

[2]Plaintiff also filed a "Notice" that was docketed as a Motion for Leave to Amend Complaint (Docs. 27, 40).  Both Biomune and Grafton opposed the motion.  At the pretrial conference, Plaintiff clarified that he did not intend for this filing to serve as a motion to amend, and accordingly, the Court finds the motion is moot.  *See* Pretrial Order, Docs. 35, 66, at 23.

[3]Fed. R. Civ. P. 56(a).

[4]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002).

[5]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[7]*Spaulding*, 279 F.3d at 904 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[8]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[12]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[13]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[14]  "Where, as here, the parties file cross-motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed

---

[8]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671).

[9]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[10]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[12]*Adams*, 233 F.3d at 1246.

[13]Fed. R. Civ. P. 56(c)(4).

[14]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."[15]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[17]

Because plaintiff is a *pro se* litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[18]  However, the court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[19]  The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[20]  Additionally, a *pro se* litigant is not excused from complying with the rules of the court and is subject to the consequences of noncompliance.[21]

---

[15]*James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) (citation omitted).

[16]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1).

[17]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[18]*Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[19]*Id.*

[20]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

[21]*Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)(insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules)).

II.     **Plaintiff's Motion for Summary Judgment**

Plaintiff filed separate motions for summary judgment on his claims against Grafton and Biomune, each containing a memorandum in support.  Plaintiff's memoranda set forth what appears to be a list of Kansas pattern jury instructions, and continues with a section entitled "Factual Allegations Common to All Claims for Relief," in which he summarizes his allegations against Defendants.  This is followed by a section entitled "Statement of Facts" consisting of thirty-one separately numbered paragraphs that contain conclusions of law and unsupported allegations against Defendants, without any citation to the record.  Plaintiff did not provide any affidavits, depositions, declarations, nor any other support for his statement of facts.  On March 28, 2011, Plaintiff moved for leave to supplement his Motion for Summary Judgment filed against Biomune.  The motion attempts to correct his failure to cite to the record in his original motion, and restates the thirty-one numbered paragraphs with reference to exhibits attached to the motion.

Both Biomune and Grafton move to strike Plaintiff's motions for summary judgment, and  oppose his attempt to supplement his motion with exhibits.  Defendants assert that Plaintiff's motions do not comply with Fed. R. Civ. P. 56 or D. Kan. Rule 56.1.  Under Fed. R. Civ. P. 12(f), the Court may order stricken from any pleading "any redundant, immaterial, impertinent or scandalous matter."  Motions to strike are generally disfavored because striking an entire pleading is a drastic remedy and such a motion is often brought as a dilatory tactic.[22] This Court typically declines to strike a motion for summary judgment or a supporting affidavit

_____

[22] *Nyanjom v. Hawker Beechcraft Corp.*, No. 12-1461-JAR, 2013 WL 6008309, at *2 (D. Kan. Nov. 12, 2013).

that does not comply with D. Kan. Rule 56.1 or Rule 56(e), and instead simply disregards those portions of the response or affidavit that do not comply.[23]  The facts in this case are, for the most part, undisputed, and both Defendants and Plaintiff have responded to the others' motions, respectively.  Although Plaintiff's motions are replete with procedural deficiencies, the Court declines to strike his pleadings, and will instead attempt to disregard the portions that are not in compliance with the Rules.

The Court will also permit Plaintiff to supplement his original motions, primarily because the court affords *pro se* litigants some degree of latitude with respect to those procedural rules that are designed primarily for the court's convenience.  Defendants assert no prejudice from Plaintiff's motion and the Court prefers to decide civil cases on their merits where possible, instead of ruling based on a party's procedural failure to present any factual material in support of his position.

### III.   Uncontroverted Facts

The following facts are either uncontroverted or stipulated to in the Pretrial Order.[24] Grafton is a national staffing firm and has been providing personnel to clients around the world since 1989.  Grafton has a local office in Leawood, Kansas.  Grafton provides temporary staffing solutions to its clients.  Grafton does not guarantee any individual employment but works with them to find temporary assignments that in some cases, may lead to permanent positions. Grafton does not have a written workplace violence policy, but does not tolerate violence in the

---

[23]*See, e.g., Stevens v. Water Dist. One of Johnson Cnty.*, 561 F. Supp. 2d 1224, 1231 (D. Kan. 2008) (citation omitted).

[24]Docs. 35, 66.

workplace.  On October 8, 2010, Plaintiff, who is African-American, completed an application with Grafton on which he stated he was seeking work with an "open" minimum pay rate, but a desired pay rate of $14.00 per hour.  Plaintiff was an employee of Grafton.

Biomune has been a client of Grafton since 2008.  Since that time, all interviews conducted by Biomune of temporary employees from Grafton have occurred at Grafton's local office in Leawood, where all potential hires are sent for interviews.  On November 19, 2010, Plaintiff had an interview at Grafton's office with Reed Longaker with Biomune.  Plaintiff arrived an hour late, but says that Terri Amyx, Senior Account Manager for Grafton, gave him the wrong address.

On November 29, 2010, Plaintiff was temporarily assigned to Biomune by Grafton. Plaintiff was assigned to a warehouse position at Biomune, where Longaker was his supervisor. At all times during Plaintiff's assignment at Biomune, he received wages from Grafton.  While he was assigned to Biomune, Grafton did not supervise Plaintiff in his day-to-day duties, was not involved in any training, was not involved in dictating his work load or schedule, nor did it provide his place of work or any tools or protective gear needed to perform his duties at Biomune.

On January 4, 2011, Plaintiff was in the probationary period of his temporary assignment with Biomune.  That day, Plaintiff and co-worker Kevin Littrell, an employee of Biomune, were removing vials from liquid nitrogen storage tanks in a small, enclosed room at Biomune's facility.  Both men were wearing required safety equipment at the time of the incident, due to the hazardous materials in the immediate vicinity, and were suited up when they entered the room. Plaintiff was wearing thermal gloves, a safety shield, an apron, and safety shoes.  The apron

went down past the men's knees and was made of a material similar to a pot holder and thicker than a kitchen apron.  Plaintiff contends that out of the blue, Littrell got behind him and grinded on his rear end with his penis, making contact with Plaintiff's rear end.  Plaintiff "shove punched" Littrell within the closed area in the immediate vicinity of the storage tanks containing hazardous materials.  Littrell did not attempt to hit Plaintiff, but took a defensive "cowering" position in anticipation of further physical aggression by Plaintiff.

Plaintiff requested a Biomune employee to get a manager.  Shortly thereafter, Corrine Prettyman, Production Manager for Biomune, appeared on the scene and Plaintiff informed her of what had occurred.  Prettyman summoned Peggy Gardella, director of Biomune Human Resources, to get her input.  The events led to an investigation, which included a meeting between Plaintiff, Littrell, Prettyman, and Gardella to discuss what had happened.  Gardella asked Plaintiff and Littrell to explain what had occurred.  Littrell said that he tripped and fell into Plaintiff, and grabbed hold of Plaintiff to break his fall.  Plaintiff interrupted Littrell and leaned over the table in the conference room, pointing at Littrell.  Gardella had to ask Plaintiff to take a seat and maintain his composure and was concerned that Plaintiff's behavior would escalate the situation.  At Gardella's direction, Plaintiff and Littrell each submitted written statements describing the incident.  Gardella then interviewed all of the warehouse employees, but none of them witnessed the incident and were unable to confirm that Littrell had assaulted Plaintiff in any way.  Several witnesses reported that Plaintiff told them he hit Littrell.  After the meeting, Plaintiff asked Gardella if he could stay for the remainder of the day, but Gardella sent him home until the investigation was conducted.

Plaintiff left Biomune, went home, and called Grafton and faxed a copy of his statement

to Teri Amyx.  No one associated with Grafton participated in Gardella's decision to send Plaintiff home for the remainder of the day.  After completing the investigation, Gardella advised Daryl Pint, Biomune's Chief Operating Officer, of Plaintiff's physical assault on Littrell.  Pint advised Gardella to have Plaintiff released from his temporary assignment with Biomune due to his act of physical violence in the workplace in violation of company policy.

On January 5, 2011, Gardella sent an email to Amyx informing Grafton that Biomune wanted Plaintiff to be released from Biomune because of his physical reaction to the incident the previous day.  That day, Amyx and Grafton's CEO, Jeff Hagan, advised Plaintiff via telephone that he was being released from his assignment at Biomune for striking another employee. Plaintiff was further advised that he was still on the available list at Grafton should other opportunities become available.  No representative of Biomune participated in this call, and no representatives of Biomune communicated with Grafton about Plaintiff's future employment.

On January 7, 2011, Amyx spoke with Plaintiff again, by which time he had returned his uniforms to Biomune.  Plaintiff stated that he wanted his position back with Biomune.

After Plaintiff was released from his assignment with Biomune, Amyx reviewed his employment information with two separate prospective clients who were looking to hire temporary employees.  Neither client chose Plaintiff for an interview.

On March 15, 2011, Plaintiff filed a complaint with the State of Kansas, Human Rights Commission ("KHRC") against both Grafton and Biomune, which was then forwarded to the Equal Employment Opportunities Commission ("EEOC").  Plaintiff's charge of discrimination alleged that Grafton participated in the unlawful practice of discriminating against him due to his sex and that Grafton retaliated against him.  A Right to Sue Letter was issued October 4, 2012.

On March 22, 2011, Amyx spoke with Plaintiff, who asked her if there were any jobs available, and she informed him that nothing was available at that time.  Plaintiff told Amyx that he had a couple of interviews, but none of them had met his salary requirements of $14.00 per hour.  During that conversation, Amyx questioned Plaintiff about this statement, because when he applied at Grafton he stated he was willing to accept $11.00 to $12.00 per hour.  Plaintiff responded that he was making $14.00 per hour when he was at Biomune, and that was his new minimum wage.  Amyx averred that Plaintiff's qualifications and new minimum pay rate made it difficult to match him with Grafton's available client base.

On April 12, 2011, Amyx informed Plaintiff that he would no longer be on Grafton's list for available placements due to his workplace violence.  Plaintiff testified that he knew striking another employee would be a strike against him for getting sent out to another job.  Amyx averred that she felt that Plaintiff was also not following up on potential leads for other job opportunities. When Grafton contacted two or three clients who each had Plaintiff's employment information, including his resume, about possible employment, each declined to set up an interview with Plaintiff.

Plaintiff seeks, inter alia, reimbursement of hospital bills and prescription medication totaling approximately $45,000.  Plaintiff testified he has not seen a psychologist or psychiatrist for the physical problems he has due to the incident with Littrell.  Plaintiff did not seek treatment for his symptoms until approximately seventeen months after he was terminated from Biomune.

IV.    **Discussion**

    A.    **Sexual Harassment**

In order to establish a prima facie case of sexual harassment by a co-worker, Plaintiff must show that he was subjected to unwelcome harassment based on his sex and that, due to the harassment's severity or pervasiveness, the harassment altered a term, condition or privilege of his employment and created an abusive working environment.[25]  In addition, because Plaintiff alleges sexual harassment by a co-worker as opposed to a supervisor, he must show that the employer is liable for the harassment on a negligence theory—that is, that the employer knew or should have known about the conduct and failed to stop it.[26]

Defendants do not dispute that Plaintiff is a member of a protected class, and the Court will assume for purposes of the motions for summary judgment that the unwelcome sexual incident occurred as Plaintiff alleges.[27]  The Court disagrees that the harassment was not severe or pervasive because it only happened once; viewing the facts in the light most favorable to Plaintiff, the incident with Littrell was physically threatening, severe, and humiliating.[28]  Thus, the remaining disputed element is whether the harassment was based on Plaintiff's sex.

 "[T]he critical issue in determining whether harassment is because of sex is whether members of one sex are subjected to a disadvantage to which the other sex is not."[29]  The Supreme Court established three ways this can be established for same sex harassment: (1) if the

---

[25]*Hollis v. Acoustic Sounds, Inc.*, No. 13-1083-JWL, 2014 WL 806190, at *4 (D. Kan. Feb. 28, 2014) (citing *Kline v. Utah Anti-Discrimination &  Labor Div.*, 418 F. App'x 774, 780–81 (10th Cir. 2011)).

[26]*Id.* (citing *Bertsch v. Overstock.com*, 684 F.3d 1023, 1027 (10th Cir. 2012)).

[27]Defendants question the credibility of Plaintiff's account of the incident because both men were wearing heavy protective gear.  At the summary judgment stage, however, the Court does not make credibility determinations. *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986).

[28]*Stevens v. Water Dist. One of Johnson Cnty.*, 561 F. Supp. 2d 1224, 1245 (D. Kan. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

[29]*Id.* at 1244 (citing *Dick v. Phone Directories Co.*, 397 F.3d 1256, 1262 (10th Cir. 2006)).

11

harasser was homosexual and motivated by sexual desire; (2) if the harassment was motivated by a general hostility to the presence of a particular gender in the workplace; and (3) if the harasser treated men and women differently in the workplace.[30]  Plaintiff does not allege any facts or allegations that the harassment occurred based on his sex.  There are no factual contentions that any of these situations existed with regard to the incident between Littrell and Plaintiff.  Thus, Plaintiff has not met his burden with respect to this element, and he cannot establish a prima facie case.

Assuming Plaintiff had met his burden, Plaintiff must also show that Defendants are liable for the harassment of a co-worker on a negligence theory.  Although Plaintiff alleges that Grafton is responsible for placing him in an unsafe place when it assigned him to Biomune, there is no support in the record that Grafton was aware of any complaint or allegations that Littrell had previously been involved in any type of unwelcome sexual incident or discriminatory act.  Nor does Plaintiff allege that Biomune had any knowledge of Littrell's harassment of Plaintiff before January 4, 2011.  Thus, the question of whether Defendants are liable for harassment in the workplace turns on the adequacy of Defendants' response to the harassment beginning January 4, 2011, when Plaintiff reported it.

The "touchstone" for measuring an employer's response to sexual harassment is reasonableness.[31]  An employer is not strictly liable for all harassment of which it actually or constructively knew; it may discharge its obligation by taking appropriate remedial or

---

[30]*Id.* (citing *Oncale v. Sundower Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998)).

[31]*Hollis*, 2014 WL 806190, at *5 (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 675–76 (10th Cir. 1998)).

12

preventative action.[32]  The Tenth Circuit has expressly recognized that a district court may, on summary judgment, determine whether an employer's responses to claims of sexual harassment were reasonable as a matter of law.[33]  After considering the facts viewed in the light most favorable to Plaintiff, the Court concludes that he has not come forward with sufficient evidence from which a jury could conclude that Defendants' responses were inadequate.

In this case, the scenario involves two putative employers: Biomune, where Plaintiff was temporarily assigned; and Grafton, an employment agency where the parties stipulate Plaintiff was employed and which assigned him to its client Biomune.  Plaintiff has not alleged that Biomune's response to the incident was not adequate.  On the contrary, the record shows that Biomune immediately responded to Plaintiff's call for a manager and started an investigation.  Both Plaintiff and Littrell offered their version of the incident and Biomune followed up with interviews of the other employees working at the time of the incident.  While the investigation was inconclusive as to whether Littrell harassed Plaintiff, it is uncontroverted that Plaintiff physically struck Littrell and was relieved of his assignment for violating company policy.  Nor does Plaintiff allege that Grafton's response to his complaint of sexual harassment was not adequate.  The record shows that Grafton did not participate in Biomune's investigation of the incident with Littrell or its decision to release Plaintiff.  After Biomune informed Grafton that it wished to release Plaintiff from his assignment, Grafton kept him on their available list and continued to try to place him in other temporary assignments, at least until April 2011.  Accordingly, the Court finds that Defendants' responses were adequate as a matter of law, and

---

[32]*Id.*

[33]*Id.* (citing *Bertsch v. Overstock.com*, 684 F.3d 1023, 1028 (10th Cir. 2012)).

summary judgment is granted on this claim.

### B.    Racial Discrimination

***Failure to Exhaust Administrative Remedies***

Defendants contend that Plaintiff's claims of racial discrimination were not included in his EEOC complaint, and thus should not be allowed.  A plaintiff must exhaust his administrative remedies as a jurisdictional prerequisite to pursuing a Title VII claim in federal court.[34]  To exhaust administrative remedies, a plaintiff must generally present his claim of discrimination to the EEOC or an authorized state agency and receive a right-to-sue letter based on that charge.  The charge "shall be in writing and signed and shall be verified."[35]  At a minimum, it must identify the parties and "describe generally the action or practices complained of."[36]  Specifically,

> The charge tells the EEOC . . . what to investigate, provides the opportunity to conciliate the claim and gives the charged party notice of the alleged violation.  A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.  In determining whether plaintiff has exhausted administrative remedies as to a particular claim, courts liberally construe EEOC charges.  The charge, however, must contain facts concerning the discriminatory and retaliatory actions underlying each claim.[37]

---

[34]*Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 665 (D. Kan. 2014) (citing *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005)).

[35]29 C.F.R. § 1601.9.

[36]*Id*. § 1601.12(b).

[37]*Richardson v. Rusty Eck Ford, Inc.*, No. 12-1313-KHV, 2013 WL 1704930, at *5 (D. Kan. Apr. 19, 2013) (internal citations omitted).

In this case, Plaintiff's charge of discrimination with the KHRC that was then forwarded to the EEOC alleged that Grafton participated in the unlawful practice of discrimination against Plaintiff due to his sex and that Grafton retaliated against him.  Plaintiff's charge checked the boxes "sex" and "retaliation" when asked to describe the basis of the alleged discrimination.  He did not check the box marked "race" or "color," and there is no allegation of race discrimination in his factual narrative in support of his allegations.  Plaintiff acknowledges his failure to include a race discrimination allegation in his charge.  Accordingly, Defendants are entitled to summary judgment on this claim for failure to exhaust his administrative remedies.[38]

### Prima Facie Claim

Even if this Court had jurisdiction over Plaintiff's claim of racial discrimination, however, his claim fails on the merits.  Plaintiff contends that he was a victim of race-based discrimination because Grafton purposely gave him the wrong address for his interview with Reed Longacker at Biomune, making him late for the interview; he was fired from the assignment to Biomune; Defendants submitted untruthful responses to his complaints; and Grafton removed him from the availability list.  As Plaintiff has no direct evidence of discrimination, his claim is analyzed using the burden-shifting analysis set forth in *McDonnell Douglas v. Green*.[39]  In order to establish a prima facie claim of discrimination or disparate treatment, Plaintiff must establish "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of

---

[38]*See Echols v. Today's Staffing*, 35 F. App'x 776, 777 (10th Cir. 2002).  Grafton's Motion to Dismiss (Doc. 39) on these grounds is denied as moot.

[39]41 U.S. 792 (1973); *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).

discrimination."[40]  If he establishes a prima facie case, the burden shifts to Defendants to assert a

legitimate, nondiscriminatory reason for the adverse employment action.[41]  If defendant meets

this burden, summary judgment against Plaintiff is warranted unless he introduces evidence "that

the stated nondiscriminatory reason is merely a pretext for discriminatory intent."[42]

     The Court finds that the only adverse employment actions alleged are Plaintiff's release

from his assignment with Biomune and his removal from Grafton's availability list.  Even

assuming Grafton purposely sent Plaintiff to the wrong address for his interview, he ultimately

got the temporary assignment he interviewed for with Biomune.  And, even assuming

Defendants "lied" in response to the KDHC complaint, Plaintiff has not alleged how that was an

adverse employment action.  Although Defendants contend that Plaintiff cannot establish a prima

facie case with respect to his discrimination claim, the Court elects to consider this argument in

connection with the pretext analysis to give Plaintiff the full benefit of the *McDonnell Douglas*

framework.

     The Court thus analyzes whether Defendants have met their burden to articulate a

legitimate, nondiscriminatory reason for the employment decisions.  "This burden is one of

production, not persuasion; it can involve no credibility assessment."[43]  The Tenth Circuit has

characterized this burden as "exceedingly light,"[44] and the Court finds that both Biomune and

---

[40]*Daniels*, 701 F.3d at 627 (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).

[41]*Id.*

[42]*Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

[43]*Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1149 (10th Cir. 2011) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

[44]*Id.*

16

Grafton have carried it here.  According to Biomune, Plaintiff was released from his temporary assignment for striking a co-worker in violation of company policy.  And according to Grafton, Plaintiff was removed from the availability list because his qualifications and wage requirements could not be matched with any of its prospective clients.  The burden of proof, then, shifts back to Plaintiff to show that Defendants' proffered reasons are pretextual.

Evidence of pretext "may take a variety of forms," including evidence tending to show "that the defendant's stated reason for the adverse employment action was false" and evidence tending to show "that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances."[45]  A plaintiff may also show pretext with evidence that the defendant had "shifted rationales" or that it had treated similarly situated employees differently.[46]  In essence, a plaintiff shows pretext by presenting evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[47]

Plaintiff has failed to identify any facts in the record to show pretext.  Plaintiff argues that Littrell, who is white, was not fired after the incident.  But the record shows that Littrell was an employee of Biomune, not on temporary assignment, and that Littrell did not strike Plaintiff after Plaintiff shove-punched him.  Likewise, Plaintiff's argument that Grafton gave a potential

---

[45]*Id.* at 1150 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

[46]*Crowe v. ADT Servs., Inc.*, 649 F.3d 1189, 1197 (10th Cir. 2011).

[47]*McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011).

employee who was white the correct address for the same interview with Biomune fails to show

how his removal from Grafton's removal of him from the availability list is pretext for

discrimination; as discussed above, Plaintiff got the assignment with Biomune.  Plaintiff's

subjective beliefs about Defendants' intentions have no bearing on the issue.  Because the

uncontroverted facts would not permit a reasonable jury to draw any inference of race-based

discrimination, summary judgment in favor of Defendants is granted on this claim.

### C.     Retaliation

Title VII makes it unlawful for an employer to retaliate against an employee because he

has opposed any practice made an unlawful employment practice by those statutes.[48]  Plaintiff

contends he was terminated from his temporary assignment with Biomune and removed from

Grafton's availability list in retaliation for his complaint about sexual harassment by Littrell.

The Court assesses Plaintiff's retaliation claim under the *McDonnell Douglas* framework.[49]  To

state a prima facie case for retaliation, a plaintiff "must show (1) he engaged in protected

opposition to discrimination, (2) a reasonable employee would have considered the challenged

employment action materially adverse, and (3) a causal connection existed between the protected

activity and the materially adverse action."[50]  The Supreme Court has recently clarified that a

Title VII plaintiff asserting a claim of retaliation must show that his protected activity was the

but-for cause of the alleged adverse employment action.[51]  If plaintiff establishes a prima facie

---

[48]42 U.S.C. § 2000e-3(a).

[49]*Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012).

[50]*Id.* (quoting *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008)).

[51]*Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517,  2533 (2013).

case, the burden shifts to defendant to articulate a facially nonretaliatory reason for its actions.[52]

If defendant articulates a legitimate nonretaliatory reason, the burden shifts back to plaintiff to

present evidence from which a jury might conclude that defendant's proffered reason is

pretextual, that is, "unworthy of belief."[53]  This framework requires Plaintiff to first establish a

prima facie case of retaliation; if he does, the burden then shifts to Defendants to establish a

legitimate, non-discriminatory reason for the alleged employment action; the burden then returns

to Plaintiff to show Defendants' proffered reason is actually pretext for retaliation under Title

VII.[54]

There is no dispute that Plaintiff made a sexual harassment complaint while assigned to

Biomune and was released from his assignment the next day.  Likewise, there is no dispute that

Plaintiff filed a complaint with the KHRC on March 15, 2011, and was removed from Grafton's

availability list on April 12, 2011.  A causal connection between protected activity and adverse

action may be shown by temporal proximity if the protected activity and the adverse action

occurred so closely situated in time as to give rise to the inference of causation.[55]  But Plaintiff

has failed to show retaliation as more than a potential motivating factor.  Plaintiff is required to

show that the challenged decisions would not have been made "but for" the retaliatory intent.[56]

Even when reviewing the evidence presented in a light most favorable to Plaintiff, no reasonable

---

[52]*Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[53]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[54]*Debord v. Mercy Health Syst. of Kan., Inc.*, 860 F. Supp. 2d 1263, 1271–72 (D. Kan. 2012).

[55]*Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

[56]*Nassar*, 133 S. Ct. at 2533.

jury could find an "inference" that Defendants "would not have taken adverse action" but for Plaintiff engaging in protected activity.  Upon Plaintiff's complaint that Littrell sexually harassed him, Biomune immediately launched an investigation, which yielded no evidence to substantiate Plaintiff's allegations; the investigation did yield, however, evidence from Plaintiff as well as other co-workers that Plaintiff physically struck Littrell in an area containing hazardous materials, prompting Biomune to release him from his temporary assignment. Plaintiff's conjecture that Defendants were "angry and mad" that he reported the harassment and thus retaliated against him is not enough to establish causation.

Likewise, Grafton did not terminate Plaintiff after he was released by Biomune, but kept him on the availability list until April 2011, when Grafton informed him he would no longer be on their available list due to this workplace violence at Biomune.  In the interim, Plaintiff's information was still being sent to Grafton's clients, but due to his qualifications and new minimum pay rate of $14.00 per hour, no clients selected him for an assignment.  There is no dispute that Plaintiff physically struck his co-worker, which he admits was a strike against him getting sent out to another job.  Thus, Plaintiff has not shown that but for his protected activity of complaining about sexual harassment, Grafton would not have taken adverse action. Accordingly, Defendants are entitled to summary judgment because Plaintiff has failed to establish a prima facie case of retaliation with respect to his claim.

### D.    Conspiracy

Plaintiff asserts a civil conspiracy claim under 42 U.S.C. § 1985(3), alleging that Defendants conspired to deprive him of his rights and/or privileges as it relates to his equal opportunity for employment and to have employment free of sexual harassment and retaliation

for complaining about such harassment.  Plaintiff's conspiracy claim falls short due to the nature

of his underlying claims.  Section 1985(3) is not intended to serve as a "general federal tort

law,"[57] and does not itself create any substantive rights but rather merely serves as a vehicle for

vindicating some otherwise defined federal right.[58]  Thus, in order to state a claim for a private

conspiracy under the "equal protection" clause of § 1985(3), a plaintiff must allege that the

conspiracy was (1) motivated by a class-based invidiously discriminatory animus; and (2)

"aimed at interfering with rights that are protected against private, as well as official,

encroachment."[59]  All of Plaintiff's claims relate to his employment with either Biomune or

Grafton and are covered by Title VII, the only other statute under which Plaintiffs seeks relief.

The Supreme Court has held that "deprivation of a right created by Title VII cannot be the basis

for a cause of action under § 1983."[60]  Because Plaintiff's claims of conspiracy do not provide

any independent source other than violations of Title VII, his § 1985(3) claims are not applicable

to this action.

Moreover, the record is devoid of evidence regarding an agreement between Biomune

and Grafton regarding Plaintiff's employment after January 4, 2011, the date of the incident with

Littrell.[61]  There is no evidence in the record that Grafton was involved in Biomune's

investigation of Plaintiff's complaint of harassment, its decision to send him home, or his

---

[57]*Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).

[58]*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979).

[59]*Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993) (quotations omitted); *accord Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).

[60]*Novotny*, 442 U.S. at 378.

[61]*See Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 770 (10th Cir. 2001) (explaining a conspiracy requires "a meeting of the minds or agreement among the defendants and concerted action.").

decision to release him from his temporary assignment.  Nor is there evidence in the record that Biomune made any efforts to dictate Plaintiff's future with Grafton or any other potential employer after Biomune requested that Plaintiff be released from his temporary assignment. Summary judgment is granted to Defendants on this claim.

### E.    Motion to Appoint Counsel

Plaintiff renews his requests for appointment of counsel, which were previously denied by Judge Rushfelt[62] and Judge Waxse.[63]  A party in a civil action has no right to appointment of counsel.[64]  The Court may, however, appoint counsel pursuant to § 1915(e)(1) for a litigant proceeding *in forma pauperis*.  The appointment of counsel is a matter within the sound discretion of the district court.[65]  In deciding whether to appoint counsel under § 1915(e)(1), the court should consider "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims."[66]  Because Plaintiff's claims lack merit, the Court concludes that his Motions for Appointment of Counsel should be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that:

1)      Defendants' Motions to Strike (Docs. 36, 65) are DENIED;

2)       Plaintiff's Motions to Supplement (Docs. 37, 67) are GRANTED;

---

[62]Doc. 6.

[63]Doc. 24.

[64]*Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989).

[65]*Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006).

[66]*Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995).

3)      Defendants' Motions for Summary Judgment (Docs. 29, 60) are GRANTED and Plaintiff's Motions for Summary Judgment (Docs. 32, 59) are DENIED;

4)       Plaintiff's Motions for Appointment of Counsel (Docs. 39, 69) are DENIED; and

5)      Defendant's Motion to Dismiss (Doc. 38) and Plaintiff's Motion to Amend (Docs. 27, 40) are DENIED as moot.

**IT IS SO ORDERED.**

Dated: July 23, 2014

 S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

23